Moncure, J.
delivered the opinion of the Court.
The petition for the appeal in this case was preferred in 1844, and complains of errors in a decree of the late Superior court of chancery for the Richmond district, rendered on the 16th of February 1828 — sixteen years before the petition was preferred. The question which first presents itself for the decision of the Court is, whether the decree was final or interlocutory. If final, the appeal when applied for was barred by the limitation prescribed by law, and must be dismissed as having been improvidently allowed; if interlocutory, it will then be necessary to decide the other questions arising in the case.
It will be admitted on all hands that the decree would have been final in form and substance, but for the suspending order contained in the latter part of it. The former part of the decree bears every mark of finality upon its face. In the report of the commissioner on which the decree was rendered, alternative statements were made embracing all the subjects of controversy in the case; and the Court approving of one of the statements and disallowing the others, ascertained a balance due from the plaintiffs to the defendant, apportioned it among the plaintiffs, and decreed the payment of the same and the costs of the suit by them to the defendant. At the conclusion of the decree an order of suspension was made in these words : “ But this decree as to the amount due on a bond exe *298 cuted by William R. Fleming to the defendant Edward Bolling, executor of Thomas M. Fleming deceased-, dated the 19th of December 1806, which bond was assigned by the defendant Edward Bolling to James Lyle, on 2^d of December 1806, and for' the amount of which bond the said Edward Bolling has received a credit in his administration account settled in this cause, say for seven hundred and fifty-three dollars and thirty-three cents, with interest thereon from the 7th day of April 1806, is to be suspended until the cause depending in this Court between Lyle and Fleming’s executor and others shall be decided.” Does this order of suspension make the decree interlocutory ?
The distinction between final and interlocutory decrees has been often considered by this Court, and there are many cases on the subject in our reports. In the case of Thorntons v. Fitzhugh, 4 Leigh 209, Judge Carr, after referring to some of the previous cases, and repeating expressions which had fallen from some of the Judges in deciding them, says, “ These cases seem to me to take the true and clear distinction; where any thing is reserved by the Court for future adjudication, in order to settle, the matters in controversy, the decree is interlocutory; but where upon the hearing all these matters are settled by the decree, such decree is final though much may remain to be done before it can be completely carried into execution, and though to effectuate such execution the cause is retained and leave given the parties to apply for the future aid of the Court.” In the case of Cocke v. Gilpin, 1 Rob. R. 20, Judge Baldwin investigated the subject very fully, and after adverting to the necessity of resorting to some criterion by which the distinction between the two kinds of decree may be preserved- remarks, “ For my own part I am aware of no proper criterion but this : Where the further action of the Court in the cause, (which he contradistinguishes from the action of the *299 Court beyond the cause, to which he afterwards adverts) is necessary to give completely the relief contemplated by the Court, there the decree upon which the question arises is to be regarded not as final but as interlocutory.”
Let us apply these rules laid down by Judge Carr, and Judge Baldwin, (and approved by this Court) to this case; and enquire in the language of the former, “ whether any thing was reserved by the Court, in the decree in question, for future adjudication in order to settle the matters in controversy ? ” or in the language of the latter, “ whether the future action of the Court in the cause was necessary to give completely the relief contemplated by the Court ? ” To ascertain what was contemplated by the Court in making the suspending order before mentioned, it will be necessary to take some notice of the facts and proceedings in the case. Thomas M. Fleming died in 1801, and Edward Bolling qualified as his executor. In 1815 the widow and children, devisees and legatees of Fleming, exhibited their bill against Bolling and his securities, in the late Superior court of chancery for the Richmond district, for the purpose of obtaining a settlement of the executorial account, and a decree for the balance that might be found due thereon. This suit was pending in said Court until the 16th of February 1828, when the decree before mentioned was rendered. During the progress of the suit three different reports were made by the commissioner under different orders of the Court; the last of which reports bears date in January 1826. Among the subjects of controversy before the commissioner and the Court, was the right of the executor to a credit for the amount of William R. Fleming’s bond mentioned in the order of suspension aforesaid. That bond had been given for the purchase of slaves belonging to the testator’s estate, and on the 22d of December 1806 was assigned by Bolling as executor to Lyle, on account of a mortgage on the testator’s real estate. *300 Suit was not brought on the bond until 1808; judgment was not obtained until 1810; and after several executions had been sued out on the judgment, one of which had been levied on slaves which were discharged ^01' want an indemnifying bond, a fi. fa. was returned nulla bona. On the one hand Lyle contended that this bond was assigned to him with the understanding that Miller would sign it as surety, and that the proceeds, when collected, and not till then, were to be applied to the payment of the mortgage, and insisted that Miller having refused to sign the bond, Bolling was bound to take it back but refused or failed though required to do so; whereupon he brought suit on the bond &c., but having failed to recover the money, credit should not be given therefor. While on the other hand Bolling contended that the bond was assigned by him to Lyle in part payment of the mortgage, that Lyle’s only recourse was upon the assignment, and that he had lost that recourse by want of due diligence. To the last report of the commissioner in the case an exception was taken by the plaintiffs for allowing credit to the executor for the said payment to Lyle, “ because (in the language of the exception,) that payment is not established, and a suit is now actually pending in the Circuit court of the United States at Richmond, to compel the payment of that very amount from the representatives of Thomas M. Fleming, and if allowed on this account the estate may be compelled to pay the same twice; and plaintiffs refer to the proceedings in said suit.” That suit had been instituted in 1804 to foreclose the mortgage, was then pending, and in it a controversy was then going on about the propriety of a credit for the said bond of William R. Fleming. It would seem that the Court suspended the decision of this case for some time, with a view of ascertaining what would be the decision in that suit in regard to the said credit; for in July 1826, the next term after the *301 the said last report was returned, an entry was made that “ the Court not being advised what decree should be rendered in the premises, time is taken until the next term to consider thereofAnd the next order which was made in the case was the decree of the 16th of February 1828. When that decree was rendered it had been ascertained that the suit in the Federal court would be dismissed for want of jurisdiction: And in the same month in which the said decree was rendered, and a few days before, to wit, on the 6th of February 1828, Lyle exhibited his bill in the said late Superior court of chancery where this case was then pending, making Bolling the executor, and his sureties, and the heirs of Thomas M. Fleming defendants, giving an account of the case in the Federal court and of the assignment of William R. Fleming’s bond, and the proceedings thereon; and praying a foreclosure of the mortgage, a sale of the mortgaged premises, and payment of the balance due on the mortgage debt out of the proceeds of sale, or by such of the defendants as might be liable therefor. He refers to the bill in this case, states that he had been informed that in an account taken in the case Bolling had improperly claimed and been allowed a credit for the amount of said bond, which said Lyle was ready to shew said Bolling was not entitled to, and prays the Court to suspend rendering any decision on the said credit until the matters contained in said bill could be fully heard and decided on in equity.
In this state of things the decree of the 16th of February 1828 was rendered, and the question recurs did the Court which rendered it contemplate any further judicial action in the case to settle the matters in controversy therein ? This Court is of opinion that it did not. The case had been pending about thirteen years. It involved the settlement of old transactions, some of which had been subjects of much controversy; and it *302 was doubtless desirable, both to the Court and the part¡esj that the case should be ended; provided it could be ended without detriment to any of the parties, arising from the pretensions of Lyle in regard to the credit ^or ^le amount of William R. Fleming’s bond. The suit in the Federal court being about to be dismissed; and a new suit having just been commenced by Lyle which might last, as it actually did, some thirteen years longer; the Court seems to have determined to decide this case, and turn the parties over to the suit just brought by -Lyle for any further adjustment of their rights and liabilities in regard to the said bond which the result of that suit might render proper. The right of the executor to a credit for the amount of said bond was a question legitimately raised and regularly controverted in the case : being maintained by the executor on the one side, and denied by the legatees on the other. The proper parties were all before the Court. Lyle was neither a necessary nor a proper party to the case. The case was therefore in a situation to be decided, (if it was not the duty of the Court to decide it, if desired by the parties,) without waiting for the decision of Lyle’s suit. In deciding it, the Court was of opinion that the executor was entitled to credit for the amount of said bond, and therefore allowed it; the effect of which allowance was to give the executor a decree against the legatees for 463 dollars 95 cents, with interest from the 31st of December 1808. The amount of the credit was 753 dollars 33 cents, with interest from the 7th of April 1806; and if it had been disallowed, the decree would have been the other way for the difference between the two sums, and interest While however the Court deemed it proper to decide the case, yet, as Lyle was not a party to it, and therefore not bound by the decree, it deemed it also proper to protect the legatees against the possible consequences of a different decision in Lyle’s suit, of the question in *303 regard to the propriety of the credit for the amount of William R. Fleming’s bond. Therefore the suspending order was added to the decree; the object of which . , . * o j? seems to have been, not to reserve the question tor iuture decision by the Court in this case, but to prevent the enforcement of the decree until Lyle’s suit was deoided ; and to subject the parties to such directions as might seem proper to the Court in that suit, when it should be decided.
That the Court did not intend to reserve the question in regard to the propriety of said credit for future decision in the case, seems to be manifest from the terms of the decree. By it the Court expressly approved the account of the commissioner containing the credit, disallowed the accounts from which the credit was excluded, ascertained the balance due to the executor, and decreed the payment of the same with costs. This was a plain action of the judicial mind upon this question, between these parties; and seems to be wholly inconsistent with an intention in the same decree to suspend judicial action on the same question. If however the Court intended to say, that while it judicially acted upon the question in this case, and between these parties, it did so without prejudice to any judicial action which might appear to the Court in Lyle’s suit to be proper; then the decree is consistent and reasonable in itself. If the Court intended to suspend judicial action on the question, why was any decree made in the case ? Or, if there was any advantage in deciding on all the questions in controversy except that in regard to William R. Fleming’s bond ; why was not the report confirmed as to all other matters, and left open as to that ? Or, if the Court intended to decree on the whole matter but reserve to itself the power of reforming the decree on motion, if the decision of Lyle’s suit should render such reformation proper; why was not such reservation expressly made in the decree ? Whether such *304 a reservation would have made the decree interlocutory, is a question which need not be considered, as no such reservation is contained in the decree. The object which the Court seems to have had in view could better be attained by rendering a final decree in the case without prejudice to any order that might be proper to be made in Lyle’s suit in regard to the single matter of William R. Fleming’s bond. By that course old and troublesome transactions would be settled by a decree, which, as the law then was, could not be disturbed after the lapse of three years; while, at the same time, the plaintiffs would be secured against all possible danger by the suspension of the decree until Lyle’s suit should be decided. That danger was a remote one to say the most of it. If Lyle should fail in his suit, as the Court when it rendered the decree must have expected he would, and as turned out to be the case, then there would be an end of the suspension, and the decree in this case might be enforced. If Lyle should succeed, his first recourse would be against Bolling and his sureties, who in that case would undoubtedly be bound in the first place for the amount of William R. Fleming’s bond; and, upon payment by them, they would be entitled to enforce the said decree. The only contingency upon which it would be necessary to resort to the plaintiffs in this case, was the success of Lyle in the suit, and the inability of Bolling and his sureties to pay the amount of the recovery. In that double contingency the mortgage would be enforced for the payment of the amount, and the heirs of the mortgagor (the plaintiffs in this case) would be protected by a perpetual injunction of the decree in Bolling’s favour, and by a decree over against Bolling and his sureties, to such extent as might be proper. All the parties concerned being before the Court in Lyle’s suit, the principles of equity would enable and require it to do justice among them by laying the burden at once on *305 the right shoulders, or giving one defendant a decree over against another, or by the exercise of its restraining powers, as might seem to be just and proper.
But it is said that the period of suspension was indefinite, and that the Court could not have intended to leave it to the clerk to determine when the suspension was ended, but must have intended to decide that question itself. The period of suspension being capable of being rendered certain, is in effect as definite as if it had been for a given time. And in the event which occurred, to wit: the decision of Lyle’s suit against him, it was only necessary to exhibit an official copy of the decision to enable the clerk to issue execution on the decree. That was in point of fact the very course pursued; and the execution was quashed, only because more than a year had elapsed after the decree was rendered, before execution was sued out. On a scire facias afterwards issued, the execution was awarded by the Court. Had Lyle’s suit been decided differently, and any occasion had arisen for preventing the execution of the decree in this case, such order would have been made by the Court in that case as would have relieved the clerk from all embarrassment in regard to the propriety of suing out the execution. And even if it had been necessary to refer to the Court the decision of the question, whether the period of suspension was ended, or whether an execution might be issued on the decree, it is not perceived that such necessity would render the decree less final; being matter relating only to the execution of the decree.
Again it is said that the decree was treated as interlocutory by the Court and counsel; orders having been afterwards made in the case. The only orders afterwards made in the case were in relation to the transfer of it, at different times, to Courts which succeeded to the late Superior court of chancery of the Richmond district, *306 and in 1840 to the Circuit court of Petersburg; and in relation to the payment of the amount of the decree into bank. On the other hand the Court treated the decree as final on the ground assigned for overruling the motion for leave to file a bill of review, and in awarding execution upon the scire facias. But if the decree was in fact final, its character could not be changed by the manner in which it was afterwards treated by the Court.
And again it is said that to treat the decree, under the circumstances of this case, as final, would operate a surprise upon the appellants, and subject them, at the same time, to great and irremediable injury. If this be so, the necessity of so treating the decree must be matter of extreme regret to the Court. But might it not on the other hand be said that to treat the decree as interlocutory, would subject the appellees to at least as great and irremediable injury. The law limiting the right of appeal was intended to remedy a great evil; and to put an end to litigation. The period of limitation, when the decree in this case was rendered, was three years; but has been since extended to five years. More than five times the former, and three times the latter period elapsed after the rendition of the decree, before the appeal was applied for. Had the decree been interlocutory in keeping open a single matter, yet being certainly intended to be final as to all other matters, the appellants could at once have appealed from it; and no good reason appears for their not having done so. Were this Court now to set aside a decree made twenty-five years ago, and require a resettlement of transactions which commenced fifty years ago, which could not be settled without great difficulty when they were comparatively fresh, and the parties and their witnesses alive, and which, now that the parties and witnesses may all be dead and the vouchers lost, could not be expected to be correctly settled at all, great and irremediable injury might be done to the appellees. But it is the duty of *307 the Court to decide the question of law whether the decree is interlocutory or final, without being influenced by the consequences of the decision, except so far as they may throw light on the question to be decided. And the Court being of opinion that the decree is final, the appeal must therefore be dismissed.
Daniel, J. dissented.
Appeal dismissed.